Estate of Eckley B. Coxe, deceased. Appeal of Eckley B. Coxe, Jr., Charlotte D. Coxe, Eliza M. D. Coxe, Mary R. D. Coxe, Edmund J. D. Coxe; Emma Coxe Yarnall, Henry B. Coxe, Jr., Charles E. Coxe, Alexander Brown Coxe, Margaret Brinton Coxe, widow of Daniel Coxe, deceased; and Alexander B. Coxe and Sophie E. Coxe, parents of Daniel Coxe, deceased; and Alexander B. Coxe, Administrator of Daniel Coxe, deceased; being the nephews and nieces of Eckley B. Coxe, deceased, and heirs and representatives of Daniel Coxe, a deceased nephew of Eckley B. Coxe, deceased.

*Decedents' estates—Collateral inheritance tax—Estates in remainder— Act of May 6, 1887.*

Under section 3 of the Act of May 6, 1887, P. L. 79, persons who do not take their estates until after the termination of a preceding estate for life or years are not subject to any liability for the collateral inheritance tax until they come into actual possession of their estates by the termination of the precedent estates, and the tax shall be assessed upon the value of the estate at the time the right of possession accrued to the owner. The " person liable " to make the return and enter the security referred to in the second proviso of the section is not the executor, but the remainder-man. If the owners of the estates in remainder after the termination of a life estate can be ascertained and positively identified immediately after testator's death, they must make the return and enter security; if they cannot be ascertained, the second proviso of the 3d section is incapable of application.

Where testator leaves his whole estate, including mining leases, to trustees to pay the income to his wife and after her death to various nephews and nieces, and from the terms of the will it cannot be presently ascer-

tained what persons will actually come into possession of the estate upon the death of the widow, nor can the value of the estate at that time be determined, the commonwealth cannot compel any person to enter security to pay the tax, but must wait until the death of the widow, when the tax will be deducted from the shares of the persons then entitled to the estate.

Argued April 10, 1899. Appeal, No. 99, Jan. T., 1899, by Eckley B. Coxe et al., from decree of O. C. Luzerne Co., No. 193, of 1895, confirming the report of appraiser of collateral inheritance tax. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from appraisement of collateral inheritance tax.

DARTE, P. J., found the facts and conclusions of law as follows:

### FACTS.

We make the following findings of fact: (1) Eckley B. Coxe, decedent, died testate at Drifton, Luzerne county, on May 13, 1895; (2) he appointed Alexander B. Coxe and Henry B. Coxe his executors, to whom letters testamentary issued on May 23, 1895; (3) he devised his entire estate to said executors in trust to pay the net income thereof to his wife, Sophia G. Coxe, during her life, and after her death in trust for his nephews and nieces living at his death, children of his brothers as set forth in said will, and the lawful issue living at his death of any nephew or niece who shall then be dead, leaving such issue, their heirs, executors and administrators; (4) the following are the names of all the nephews and nieces of decedent, children of his brothers, Brinton Coxe, deceased, Alexander B. Coxe, Henry B. Coxe and Charles B. Coxe, deceased, who were living at the time of his death, to whom he devised his estate, after the ending of the life estate devised to his widow, Sophia G. Coxe, viz: children of said Brinton Coxe: Charlotte D. Coxe, born November 21, 1873, Eliza M. D. Coxe, born November 7, 1875, Mary R. D. Coxe, born January 29, 1877, Edmund J. D. Coxe, born May 3, 1881; children of said Alexander B. Coxe: Daniel Coxe, born November 1, 1866, Anna Coxe Yarnall, wife of Charlton Yarnall, born February 25, 1870; children of said Henry B. Coxe: Henry B. Coxe, Jr., born

February 12, 1866, Charles E. Coxe, born July 12, 1870, Alexander B. Coxe, born September 9, 1875. Daniel Coxe, a nephew, as above, died on September 6, 1895, leaving no issue or the descendants of such issue surviving him, but leaving surviving him his father, Alexander B. Coxe, his mother, Sophia Coxe, his sister, Anna Coxe Yarnall, and his wife, Margaret Brinton Coxe; (5) at the time of the decedent's death none of his nephews or nieces, children of his said brothers, had died leaving issue; (6) none of the said nephews or nieces, or the issue of any such, ever filed with the register of wills any return of the amount of their estate, taken under the will of said decedent, as provided in section 3 of the Act of Assembly of May 6, 1887, P. L. 79, entitled "An act to provide for the better collection of collateral inheritance taxes," or paid or gave any bond to secure the payment of the collateral inheritance tax on their said estate, except the bond filed on appeal from the appraisement; (7) the personal estate of decedent which comes to the knowledge of the appraiser, Stanley W. Davenport, was valued by him at the sum of $1,446,320.33; after deducting the value of the life interest of the widow, one third, there remained the sum of $964,212.56, upon which he assessed a collateral inheritance tax at the rate of $5.00 upon every $100, amounting to $48,210.62, and interest from May 13, 1896, at twelve per cent per annum.

### FINDINGS OF LAW.

1. Subject to the life estate of the widow, Sophia G. Coxe, the personal estate of said Eckley B. Coxe, as appraised by Stanley W. Davenport, to the amount of $1,446,320.33 vested at the death of the decedent in his nephews and nieces, as identified in the fourth finding of fact.

2. After deducting one third thereof as the proper legal value of the widow's life estate, there remained the sum, $964,212.56, of which said nephews and nieces were the owners.

3. Said owners having failed to make a full return of said personal estate to the register of wills of said county within one year from the death of the decedent, to wit: on or before May 13, 1896, or within that time to enter into security to pay the collateral inheritance tax thereon to the satisfaction of said register, the said tax has become immediately payable and collectible,

amounting to $48,210.62, with interest thereon at twelve per centum per annum, from May 13, 1896.

And now, January 28, 1899, we confirm the report of appraiser, Stanley W. Davenport, and dismiss the appeal therefrom at the cost of the appellants.

*Error assigned* was the decree of the court.

*A. H. McClintock* and *S. P. Wolverton*, for appellants.—The real owners of the estate who are taxable, and from whom the taxes must under the law be collected, are not now ascertainable under the will of Eckley B. Coxe, deceased, and it is impossible to tell who will come into the beneficial interest of any share of this estate after the death of the life tenant: Dos Passos on Inheritance Tax, p. 270; Wharton's Estate, 10 W. N. C. 106; Swann's Est., 12 Pa. C. C. R. 135; Crompton's Est., 10 Pa. C. C. R. 443; Com.'s App., 127 Pa. 435; Matter of Curtis, 142 N. Y. 219; Matter of Roosevelt, 143 N. Y. 120; Matter of Hoffman, 143 N. Y. 327; Cooper's Est., 127 Pa. 435; Nieman's Est., 131 Pa. 346.

*L. A. Watres* and *James H. Torrey*, for appellee.—There are ten estates in remainder in personal property completely vested on the death of the testator in the ten nephews and nieces, their heirs, executors or administrators.

The facts of this case bring it so clearly within the provisions of the 3d section of the act that there is no room for nice discussions of the distinction between vested and contingent remainders, or between remainders in real and personal estate; or of the canon of construction of statutes. It is enough to say that if the commonwealth cannot now collect this tax there can be no case in which the tax on a remainder can be collected before it comes into actual possession, except by the owner's voluntary payment; and the last words of section 3, "and in case of failure so to do, the tax shall be immediately payable and collectible," are thus deprived of all force and significance.

The legacies vest upon the death of the testator: Read's App., 118 Pa. 215.

The interests of the appellants were assignable: Patterson's Exrs. v. Cladwell, 23 W. N. C. 373; Churchman's Est., 20 W. N. C. 367.

They were capable of disposition by will except in the one case of a niece who should die leaving issue: Boies's Est., 177 Pa. 190.

OPINION BY MR. JUSTICE GREEN, October 6, 1899:

The entire contention in this case arises upon the reading of the 3d section of the Act of May 6, 1887, P. L. 79. In another form the cause was before us in Coxe's Appeal, 181 Pa. 369, and an interpretation was then announced which is very material to the disposition of the present controversy. In that case it was contended on behalf of the commonwealth that the executors were the proper persons to make payment of the collateral inheritance tax upon all of the estate which was given by the will to collaterals, but not to take effect until after the death of the widow. We held that the executors were not the proper persons to be required to make present payment of the tax, because the estates subject to the tax were estates in remainder which could not take effect until after the death of the life tenant, and the executors are not the persons primarily charged with the payment of the tax, either present or future. We also held that the word "owner," employed in the second proviso of the 3d section, to designate the person who was charged with the duty of making a return to the personal estate subject to the tax, and give security for its ultimate payment, excluded the executors from the category of those who were subject to that duty, and that it had the same meaning as the words "person liable," or person "who shall come into actual possession," which appear in the first clause of the 3d section. In order to fully appreciate the import of this decision, and its relevancy to the present contention, it will be well to quote the full text of the 3d section. It is as follows: " In all cases where there has been or shall be a devise, descent or bequest to collateral relatives or strangers, liable to the collateral inheritance tax, to take effect in possession, or come into actual enjoyment after the expiration of one or more life estates, or a period of years, the tax on such estate shall not be payable, nor interest begin to run thereon, until the person or persons liable for the same shall come into actual possession of such estate by the termination of the estates for life or years, and the tax shall be assessed upon the value of the estate at the

time the right of possession accrues to the owner as aforesaid."
Before quoting the words of the proviso of the section it is
desirable to pause a moment to consider the plain meaning of
the foregoing words. It is perfectly clear that those persons
who do not take their estates until after the determination of a
preceding life estate are not subject to any liability for the tax
until they come into actual possession of their estates. The
act says, " The tax on such estate shall not be payable, nor
interest begin to run thereon, until the person or persons liable
for the same shall come into actual possession of such estate."
If the tax shall not be payable until that event, it does not arise,
it has no beginning, and hence the commonwealth has no title
to it and cannot demand its payment until the estate itself
" comes into actual possession " of the person entitled. And
such coming into actual possession must be "by the termina-
tion of the estates for life or years." And again, and in the
same direction, it is positively provided that " the tax shall be
assessed upon the value of the estate at the time the right of
possession accrues to the owner as aforesaid." That is, al-
though the estate in remainder may have had a definite value
at the time of the death of the testator in the case of a will,
or of the grant in case of a deed, it is not that valuation that
is to be the test of the tax, but the valuation of the estate at
the time it comes into possession. This is the plain, actual,
common sense meaning of the words we are considering, and
this meaning is not at all impaired by the language of the pro-
viso which we now quote: "Provided that the owner shall have
the right to pay the tax at any time prior to his coming into
possession, and in such cases the tax shall be assessed on the
value of the estate at the time of the payment of the tax, after
deducting the value of the life estate or estates for years. And
provided further that the tax on real estate shall remain a lien
on the real estate on which it is chargeable until paid. And
the owner of any personal estate shall make a full return of
the same to the register of wills of the proper county within one
year from the death of the decedent, and within that time
enter into security for the payment of the tax to the satisfac-
tion of such register; and in case of failure so to do the tax
shall be immediately payable and collectible."

The first proviso relates only to the case in which the owner

desires to pay the tax before he comes into possession, and has no application here. It is under the second proviso only that the present contention arises. On its face and upon its plain meaning this proviso can only have application to the ordinary case of a devise or bequest to a person who is named and can be positively identified as "owner" immediately after the death of the testator, and also when the "personal estate" which is subject to the tax can be fully described, because the return of the estate must be made by the "owner" within one year after the death of the decedent, and the estate must then be described in the return. Of course the great majority of cases are of this character, and the duty, and the person who is to perform it, can be readily indicated. But where it is impossible that the "owner" who ultimately takes the estate can be known, or where from the peculiar character of the estate to be charged, it cannot be identified within the year, the proviso becomes incapable of application, and the consequence of immediate payment of the tax does not result. It must be borne in mind that this consequence is merely an imposed penalty for the nonperformance of the duty prescribed by the proviso. It is in contravention of the provision contained in the enacting part of the 3d section, which specifically declares that the tax "shall not be payable nor interest begin to run thereon" until after the termination of the life estate. Being therefore a penalty for the violation of a statutory duty the law which imposes it must be strictly construed.

In endeavoring to ascertain whether the penalty has been incurred in the present case, it is indispensable to know who is the person that is to perform the duty, the violation of which is punished by making the tax immediately payable. In Coxe's Appeal, supra, we decided that it was not the executors who were to make the return, and we so decided for the reason that they were not the owners of the estate to be charged. Our Brother MITCHELL delivering the opinion in that case said: "By section 3 of the Act of May 6, 1887, P. L. 79, the tax on estates in remainder is not payable until the person or persons liable for the same shall come into actual possession of such estate by the termination of the estates for life or years." After reciting the proviso the opinion proceeds: "It is under this last clause that the commonwealth claims that the tax in

the present case is now collectible, and the learned court below has held that the executors are the owners liable for its payment. This construction, however, cannot be sustained without doing violence to the letter, as well as the plain intent, of the statute. The tax is not payable until the person liable for the same 'shall come into actual possession.' This cannot possibly mean any one but the remainder-man, for he is the only one to come into actual possession by the termination of the precedent estate for life or years. And in the proviso which adds that 'the owner shall have the right to pay the tax at any time prior to his coming into actual possession,' the 'owner' must for the same reason be the remainder-man, for he is 'the person liable for the same,' and the only one who is to come into possession. And when in the second proviso 'the owner of any personal estate' is directed to make a full return of the same and enter security for the payment of the tax, and in case of failure to do so the tax is to become immediately payable, the 'owner' meant, is the same person as in the preceding clauses, the person liable to pay, and the person who is to come hereafter into actual possession, i. e., the remainder-man. The intent of the statute is to charge the beneficiary of the estate, and whether the phrase used is 'person liable,' or person who 'shall come into actual possession,' or 'owner,' it always means the same person, the remainder-man. It is to him alone that the commonwealth must look for present payment of tax on property, whether real or personal, the actual possession or enjoyment of which is postponed by an intervening period of life or years."

It will be perceived at once that the foregoing is an absolute adjudication that the only person who can be charged with the duty of making the return is the owner who is to come into actual possession of the estate to be charged, after the determination of the precedent life estate. If in the present case we can now know who those owners are we can readily determine who are to perform the duty. But, on the other hand, if we cannot now know who those owners are, then it is impossible to decide who shall make the return, and the second proviso of the 3d section is incapable of application. The solution of the question requires only an examination of the will of the testator, to learn if we can who are the persons who are to take the col-

lateral estates in remainder, after the determination of the life estate of the widow.   These are described, or rather defined, at much length, and by varying circumstances and conditions in the will.   The testator had no children and left no lineal descendants.   He had two living brothers, and children of two deceased brothers.   To the brothers living and dead he gave nothing.   These were not named in the will.   The living brothers were made executors, and to them he gave the whole residue of his estate upon trust to pay over the entire income to his widow during her life.   After her death the executors are to hold the estate in trust for all the nephews and nieces, children of the brothers named, " who shall have been living at the time of my death, and the lawful issue, living at the time of my death, of any nephew or niece who shall then be dead leaving such issue, their heirs, executors and administrators, the said nephews and nieces to take per capita and not per stirpes, and the issue of any deceased nephew or niece to take among them such share only as their parent would have taken if he or she had been living at the time of my death, and to take such shares per stirpes and not per capita."   By subsequent provisions he directed that the share of any nephews who, at the death of his widow, had attained the age of twenty-five years, should " vest in possession " absolutely; that the share of any nephew who had not, at the death of his widow, attained the age of twenty-five years, should be held in trust until he attained that age and should then vest in possession; that the share of any male descendant of a nephew or niece should at the death of testator's widow vest in such descendant of such nephew or niece if he had then attained the age of twenty-one years, otherwise it should be held for him until he did attain such age and then vest absolutely.   The shares of any nieces, and of the female descendants of nephews or nieces, entitled, the testator directed should be held in trust for them during their lives, and only the net income of their shares should be paid to them, the principal to be paid after their deaths to the children of such as left children, or to the appointees by will of such as died and left wills, or to the right heirs of such as died and left no wills.   Then follows another provision directing that wherever in his will the testator had directed the payment of income of any portion of his estate

bequeathed upon any trust, only one half of such income derived from rents or royalties on coal mined, should be paid out, and the other half should be retained by the executors, and be considered as capital to represent the exhaustion of the land due to the mining of coal therefrom, and the principal thus resulting should be held upon the same trusts as were provided for the other parts of his estate.

Bearing in mind now that the only persons who are liable to pay the tax are those who are the owners of the estates subject to the tax, at the time of the death of the widow, how is it possible now to say who those persons are, or who they will be. The widow may live many years. She is said to have an expectancy of fifteen years, but may live far beyond that time. The time of her death is absolutely uncertain, and whether those who would be entitled if she were to die at this time will be alive when she dies is just as uncertain. They may all be then dead or some may be dead and some living. Of those who may then be dead some may have appointed by will the persons who shall take their shares of the estate, others may die intestate, and then only the right heirs of such under the intestate laws of Pennsylvania will be entitled to take. Who those persons may be it is beyond the wildest conjecture to determine. It is sufficient to say, as to all of the persons who will be legally entitled to take the collateral estates in remainder under the will of this decedent, that it is utterly and absolutely impossible to say at this time who they will be, or may be, or whether any one of those who have been ordered to pay this tax will ever receive a single dollar of the estate upon which it is charged. It is the actual possession of the estate which alone creates the liability to pay the tax, and that liability does not arise until after the termination of the life estate, under the express and positive terms of the act. If the decree now made by the court below should stand, it may easily occur that the tax will all be paid by persons who may never receive a single penny of the estate, and that those who do receive the estate will never have paid a penny of tax. A conclusion so absurd and so grossly unjust ought never to be reached by a judicial sentence unless in the stress of a dire necessity which cannot possibly be avoided. It is a satisfaction to know that there is no such necessity, nor any sort of statutory requirement which demands

such a ruling in this case. The commonwealth will receive the whole of this tax, beyond all question, and will receive it at the very time when by her own law she has ordained that it shall be paid. The persons entitled to the estate cannot receive it without the payment of the tax. It is the sworn duty of the executors to deduct the tax when paying over the share of the estate to which each party is entitled, and to pay the tax thus received over to the commonwealth.

So far as the nieces are concerned the injustice of the decree is still more glaring and oppressive. Four of them have been decreed to pay each $5,990.97 as the collateral inheritance tax upon their shares of the estate, when in point of fact they are absolutely excluded by the will from ever receiving any portion of the estate other than the mere income of their shares. The principal is to be paid either to their appointees or their right heirs. ·As to all of the persons who have now been ordered to pay the tax, they will be obliged to pay it out of their own estates if they have any, when the law manifestly contemplates and provides that it shall be paid out of the estate when received.

Another difficulty of quite a serious nature grows out of the character of the estate left by the decedent. The remainder-men are only subject to the tax upon its valuation at the time they receive it. The present valuation shows that $200,000 of it consists of coal leases in which the testator was lessor. By the time of the widow's death it is entirely possible these leases will have become valueless by reason of the exhaustion of the coal. The same is true as to the common and preferred shares of the Cross Creek Coal Company and the notes of that company, amounting in the aggregate to upwards of $300,000. What will these be worth when the widow dies? Nobody can possibly tell, and hence the present valuation may be very largely impaired when the time arrives at which alone the estate is to be valued for the present taxation.

The precise question involved in the present controversy does not appear to have been before us at any time heretofore. The nearest approach to it is the case of Coxe's Appeal, supra, and the reasoning upon which that decision was founded seems to lead directly to our present conclusion. In the state of New York, where the collateral inheritance tax law is very similar to our own, the Court of Appeals appears to have reached the same

conclusion as is expressed in this opinion. In the Estate of Curtis, 142 N. Y. 219, in Matter of Roosevelt, 143 N. Y. 120, and in Hoffman's Estate, 143 N. Y. 327, various aspects of this subject were presented, and the decisions made were upon the theory that the tax could not be imposed until after the determination of the precedent life estates, and then only upon that which came to the ultimate remainder-man. The facts were not the same in all the cases, nor were the questions precisely the same, but the controlling principle expressed was as above stated. In Roosevelt's Estate, BARTLETT, J., in the opinion, said : " It is not to be assumed that the legislature intended to compel the citizen to pay a tax upon an interest he may never receive, and the reasonable construction of this statute leads to no such unjust result. It does not follow because the legislature taxes persons beneficially entitled to property or income, in possession or expectancy, that a tax was thereby imposed upon an interest that may never vest; until that time arrives the power to tax does not exist. The testator has created seven life annuities, if the annuitants survive his wife, and there can be no vested interest in any of them until the happening of that event. All may survive—a portion may be living—every one may be dead. To hold such a possibility presently taxable, and its value capable of immediate computation, shocks the sense of justice." In Hoffman's Estate, FINCH, J., said, " For taxation is a hard fact, and should attach only to such ownership, and may properly be compelled to wait until chances and possibilities develop into the truth of an actual estate possessed, or to which there exists an absolute right of future possession." In Curtis's Estate the judicial comments were in the same line but are too voluminous to be quoted.

Upon the whole case we are clearly of opinion that the tax in the present case cannot be determined until after the expiration of the life estate of the widow, that it will not become due and payable until that event has transpired, and that it is the value of the property as it will then appear to be, that must constitute the basis upon which the tax must be declared. The assignments of error are sustained.

The decree of the court below is reversed at the cost of the appellee, and the proceedings to appraise and collect the tax in question are dismissed and set aside.