## Shugars et al. *v.* Chamberlain Amusements Enterprises, Inc., Appellant.

*Taxation—Direct inheritance taxes—Lien—Divestiture of lien —Conversion under power of sale—Life estates — Remainders — Notice—Subrogation—Acts of May 6, 1887, P. L. 79; July 11, 1917, P. L. 832, and June 20, 1919, P. L. 521.*

1. The conversion of real estate under a discretionary power of sale does not divest the lien of direct inheritance taxes where the estate is broken into life estates, and the remainders are not presently ascertainable.

2. Where a will with power of sale gave children a life estate in the net income of a trust with remainders to the issue, and, on failure of the issue, to collaterals under the intestate laws, and where none of the children have issue, but there is a prospect of issue, there is no conversion until a sale is actually made.

3. Under the inheritance tax Acts of May 6, 1887, P. L. 79; July 11, 1917, P. L. 832, and June 20, 1919, P. L. 521, the word "owner" refers to the remainderman.

4. The intent of the statutes is to charge the remainderman, notwithstanding the use of words which might have a tendency to establish a broader meaning, and the executors are not required to pay the tax on the passing of the remainder.

5. When the Commonwealth adopted an enlarged policy of taxation in 1917, a new class of property or rights was subjected to governmental burdens.

6. Although commonly called a direct inheritance tax, under the Act of June 20, 1919, P. L. 521, the thing taxed was the right of succession or the privilege of receiving at death the property possessed by a decedent, either by will or under the intestate laws.

7. The policy of the State to tax this property, has no relation to the divisibility of estates. Bequests, descents, devises and gifts

are the elements or incidents affecting rate, time and manner of assessment, when and by whom payable.

8. Notwithstanding the different situations, the tax springs into life on the death of the property owner; eo instante it becomes seated on their estates.

9. Although the amount of the tax may not be known presently, it may with certainty be ascertained in the future, and whatever that sum may be, it remains a lien on the property until removed in some way pointed out by law; persons dealing with property must be held to have notice of it. Coxe's Est., 193 Pa. 100, explained.

10. The act points out various ways in which the tax may be presently ascertained and paid, so that it cannot be charged that the legislature intended to prevent the alienation of land for unnumbered years while the lien of the tax remained.

11. If settlement is made as of to-day by ostensible owners, and it subsequently turns out that they or their issue do not ultimately receive the estate, there is no reason why subrogation could not be invoked under equitable principles.

Argued May 19, 1925. Appeal, No. 45, Jan. T., 1925, by defendant, from decree of C. P. Schuylkill Co., May T., 1925, No. 5, for plaintiff, in case of Martha W. Shugars, Administratrix, and Daniel Pfeil, Administrator of Estate of William B. Shugars, deceased, et al. v. Chamberlain Amusement Enterprises, Inc. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Case-stated under equity Rule No. 32. Before KOCH, J.

The opinion of the Supreme Court states the facts.

Decree for plaintiffs: 21 Schuyl. L. R. 179. Defendant appealed.

*Error assigned* was decree, quoting it.

*W. L. Kramer,* with him *J. Mal Gillespie,* for appellant.—To establish a conversion, the will must direct it absolutely, or out and out, irrespective of all contingencies: Anewalt's App., 42 Pa. 414; Stoner v. Zimmer-

man, 21 Pa. 39; Brennan's Est., 277 Pa. 509; Chamberlain's Est., 257 Pa. 113.

While the Act of 1919 repeals the Act of 1917, yet the provision of the Act of 1919 with regard to the lien of taxes is the same as the Act of 1917. So that, in this case, the executors of the Lewis C. Thompson Estate, who had discretionary power to sell the real estate of the decedent, found that it would be advantageous to the estate to sell it at the particular time it was sold to the said William B. Shugars, they could have sold the title clear and discharged of this inheritance tax by coming forward as the Act of 1919 provides, and having the tax assessed and paid as well upon the remainder as upon the life estate, because the act specifically says that the remaindermen may come forward and pay this tax before it becomes due if they so desire, and while the remaindermen in this case cannot be ascertained, certainly the time must come when they will succeed the life tenants and become vested of this estate, so that if the executors and trustees wished to avail themselves of the advantage of the sale they should have provided for the payment of the entire tax so that the purchaser would have received a title clear and discharged of all tax liens. There is no doubt that the tax that exists on real estate where the remaindermen are known and have to pay the same after the life tenant has passed out, in that period between the death of the life tenant and the coming into possession of the known remaindermen, the tax lien lies dormant, but is, nevertheless, a lien on the real estate. In this case the remaindermen are not known. Surely it cannot be contended because they are not known that the lien of the tax does not exist.

*Arthur L. Shay*, for appellee.—Where there is a discretionary power in the will for the executors or trustees to sell, conversion takes place when the land is sold, and, in the instant case, when the executors of L. C. Thomp-

son sold the lots in question, the land was converted into money.

A possibility of issue is always supposed to exist in law, even though the donees be each of them one hundred years old: List v. Rodney, 83 Pa. 483; Gowen's App., 106 Pa. 288; Westhafer v. Koons, 144 Pa. 26, 32.

It is apparent, therefore, that this estate may be tied up for many years to come.

An appraisement for collateral inheritance tax of the whole estate of a testator cannot be sustained, where it appears the will created life estates and estates in remainder, and the will itself shows that the persons who would ultimately take the remainder cannot be ascertained until after the death of the life tenant: Montgomery's Est., 63 Pa. Superior Ct. 318; Coxe's Est., 193 Pa. 100; Coxe's Est., 181 Pa. 369; Roosevelt's Est., 143 N. Y. 120; Hoffman's Est., 143 N. Y. 327.

There can be no lien of tax when the amount of the tax is not fixed and the liability for its payment does not exist: Hill v. School District, 239 S. W. 987.

Until the tax is due and payable, it has no beginning, and the Commonwealth has no title to it: Coxe's Est., 193 Pa. 100; Jewel's Est., 235 Pa. 119; Myrtetus's Est., 69 Pa. Superior Ct. 318.

*Philip S. Moyer,* Deputy Attorney General, and *George W. Woodruff,* Attorney General, for the Commonwealth.—The remaindermen under the will in question who will come into possession of the remainder cannot be ascertained; and the inheritance tax is, therefore, unable to be determined at present, but is a lien upon the real estate in accordance with the inheritance tax acts: Jackson v. Myers, 257 Pa. 104.

A discretionary power of sale given to the executors as trustees does not work any equitable conversion of the real estate in question, nor does it do so when such power is exercised: Davidson v. Bright, 267 Pa. 580.

The exercise of the discretionary power of sale by the executors as trustees does not divest the lien of inheritance taxes from the real estate: Cullen's Est., 142 Pa. 18.

OPINION BY MR. JUSTICE KEPHART, June 27, 1925:

Does the conversion of real estate under a discretionary power of sale divest the lien of direct inheritance taxes where the estate is broken into life estates and remainders, and the remaindermen are not presently ascertainable? The court below held that it did.

Lewis Thompson died seized of real estate, and gave to his executors and trustees power and authority to sell and reinvest the proceeds in their discretion. Thompson's will gave his children a life estate in the net income of the trust created, with a remainder or remainders to the issue, if any; and, upon failure of issue, to the collateral kindred under the intestate laws. None of the children have issue at the present, but there is a possibility of issue: List v. Rodney, 83 Pa. 483, 492; Westhafer v. Koons, 144 Pa. 26, 32. Under the will, the conversion did not take place until the sale was made: Davidson v. Bright, 267 Pa. 580. Until conversion actually happens, land is still land, and money still money: Schoen's Est., 274 Pa. 28, 33.

Thompson died June 6, 1918; at the time of his death the Collateral Inheritance Tax Act of May 6, 1887, P. L. 79, and the Direct Inheritance Tax Act of July 11, 1917, P. L. 832, were in force. Section 9 of the Act of 1917, similar to section 3 of the Act of 1887, and section 3 of the Act of June 20, 1919, P. L. 521, may be condensed as follows: "Where there is a devise......liable to the tax......imposed, which devise......is to take effect in possession......after the expiration of......life estates......the tax......shall not be payable, nor shall the interest begin to run thereon, until the person liable......shall come into actual possession......The tax shall be assessed......at the time the right of pos-

session accrues to the owner......The owner may pay the tax at any time prior to his coming into possession. In such cases the tax shall be assessed on the value...... at the time of the payment......*The tax on real estate shall remain a lien on the real estate on which the same is chargeable until paid.*"

When the legal effect of this provision was before the court in Coxe's Est., 181 Pa. 369, we held the word "owner" referred to the remainderman. The intent of the statute was to charge the beneficiary (remainderman) notwithstanding the use of words which might have a tendency to establish a broader meaning, and the executors were not required to pay the tax on the passing of the remainder.

In the same estate, 193 Pa. 100, an effort was made to force the presumptive remaindermen to give security or pay the tax. We held that under the will these persons could only be determined after the termination of the life estate through the death of the widow. The tax under the act did not become due and payable until the specified contingency happened; at that time the value of the property as it then existed was to be used as the basis of assessment on which the tax must be declared. We accordingly struck off the levy against the collaterals. The question that decision left open is the one now before us.

When the Commonwealth adopted an enlarged policy of taxation in 1917, a new class of property or rights was subjected to governmental burdens. Though commonly called a direct inheritance tax, yet, under the Act of 1919, the thing taxed was the right of succession or the privilege of receiving at death the property possessed by a decedent either by will or under the intestate laws. The fundamental thought was to levy a toll against the passing of property of citizens going by reason of death to others in whatever light the taking may be viewed. Section 1 of the Act of 1917, P. L. 832, states what was proposed to be done: "All estates......within this

Commonwealth......passing from any person who may die seized or possessed of such estate, either by will or under the intestate laws......are hereby made subject to a tax." The tax was a sum to be made certain under varying conditions and subject to definite rules.

Having declared as a policy of government the levying of a new tax, the statute then deals with many matters in connection with its ascertainment and enforcement. It specifies particularly the rate, the basis on which the rate is to be applied, the time when that basis is to be determined, the amount that is to be paid thereunder and the time payable; these are not alike in all estates, but change as the disposer of the estate sees fit to change the quantity or quality of the estate given; in the aggregate, the Commonwealth receives no more or less than the full amount of the tax through equitable treatment of the various estates into which the whole may be divided. These incidents of the tax may become the subject of a more detailed consideration.

The policy of the state to tax this property, however, has no relation to divisibility of estates. Bequests, descents, devises and gifts are the elements or incidents affecting rate, time and manner of assessment, when and by whom payable. It is immaterial to the State whether there has been a disposition of the property at death by will or otherwise; what the Commonwealth does is to fix all species of property of decedents with a tax,—"all estates and property, real, personal and mixed."

Notwithstanding the different situations, *the tax springs into life on the death of property owners;* eo instanti, it becomes seated on their estates. If, however, no provision has been made for the ascertainment of the tax, the mere announcement by statute of an intention to tax would not burden an estate.

Having inaugurated this tax, fixing ways and means for determining the amount, it is possible, under certain conditions, that a part of it does not become payable

until a certain event, or the amount may not be ascertainable because the assessment or value on which the rate is to be applied is not known until such event happens; nevertheless, to preserve and safeguard this revenue, the legislature ordered that the tax, when on real estate, should remain a lien until paid. This is an incident of the tax without regard to matters that make it up. The amount may not be known presently; it may with certainty be ascertained in the future, and whatever that sum may be, it remains a lien on the property until removed in some way pointed out by law; persons dealing with property must be held to have notice of it.

It is true that in the second case of Coxe's Estate, supra, in discussing this section we said, p. 105, "If the tax shall not be payable until that event [actual possession], it does not arise, it has no beginning, and hence the Commonwealth has no title to it and cannot demand its payment until the estate itself 'comes into actual possession' of the person entitled." But it must not be forgotten what was before the court for consideration. A tax had been assessed because the remaindermen failed to give security for its payment. We held that inasmuch as they could not be ascertained, the supposed remaindermen could not be forced to give security. Hence the use of the words above quoted. The phrase "it has no beginning" referred to the quantity of the tax and the persons by whom payable, and not to the fact that the tax itself did not exist. It did exist and was a thing in being from the moment the owner of the estate died.

As stated in Schoen's Estate, supra, 34, land is still land until conversion takes place under the discretionary power of sale, and the lien of general debts attaches immediately on the death of the person who owned the real estate: Davidson v. Bright, supra, 587. The analogy between the two cases, as to the sale divesting the lien, causing the tax to follow the fund, fails. In deal-

ing with the subject of the general debts, we pointed out a method by which they could be enforced and collected; but such sums are fixed and determined, and may be passed to the fund realized. Here the legislature has expressly declared the tax "shall remain a lien on the real estate on which the same is chargeable until paid."

While the estate in remainder has no present ascertainable value that can be used to determine the amount due for lien purposes, the value or basis of assessment, with the rate to be applied, and the amount ultimately due, is of definite ascertainment when the contingency happens; for this, the real estate at final settlement stands good. Any other conclusion would deny to the Commonwealth its claim in many cases; the real estate might be reduced to cash, without provision for security, with the possibility of waste or dissipation and without protection offered the Commonwealth. The legislature guarded against this.

But, says appellee, "surely it was not the intention of the legislature to prevent alienation for unnumbered years while the lien of this tax remains." The act points a way out. The purchaser, as an owner, could no doubt pay the tax; and here, if the land was sold clear of liens, the executors may be required to make good the tax. The act gives other methods through which the tax may be presently ascertained and paid. If settlement is made as of to-day by ostensible owners, and it subsequently turns out that they or their issue do not ultimately receive the estate, we see no reason why subrogation could not be invoked under equitable principles.

Appellee says there can be no lien for tax when the amount is not fixed and the liability for its payment does not exist. This is in effect saying that a judgment on a bond cannot be entered which calls for the payment of a sum indefinite at present but certain in the future, on a bond of indemnity, or for the faithful performance of duty.

The court below erred in holding the tax was not a lien, and, as the sale of the property was dependent on this fact, the decree of the court below is reversed and the bill dismissed; costs to be paid by appellee.