## Rowell's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the opinion of

Van Dusen, J., hearing judge.—Testator died May 2, 1931, and by his will gave an annuity of $12,000 to his widow and the rest to collateral heirs and charities. Testator's widow died October 4, 1931. The register of wills assessed inheritance tax against the widow's annuity, valuing the same at $5,066.67, the amount actually received by her, and not on the basis of her expectancy of life according to the mortality tables. The register then assessed inheritance tax against the remainder interests, valuing the same as of the date of the widow's death, without deducting anything for the value of the widow's annuity. The total tax assessed is $43,663.58.

The will directs that all inheritance taxes be paid by the residuary estate The executors made payment on account of inheritance tax, on August 1, 1931 specified to be as follows:

```
Direct tax at 2% on $72,000..........................  $1,440.00
Collateral tax at 10% on $212,000.....................  21,200.00
                                                        ──────────
                                                        $22,640.00
        Less 5% discount...............................   1,132.00
                                                        ──────────
                                                        $21,508.00
```

On April 29, 1932, they paid $17,517.38, a total of $39,025.38.

The executors, who are also trustees of the residuary estate, claim that the tax on the widow's annuity should have been assessed according to her expectancy of life, and that the tax on the remainder interests should be assessed upon the value of principal after deducting such assessed value of the widow's annuity.

In my opinion, the register of wills, in assessing the inheritance tax on an annuity or life interest, should value the same with the aid of mortality tables in every case. The tax should therefore be paid on the expectancy of life and not on actual experience. It would lead to great inequalities if the tax were assessed on actual experience in the few cases where the life estate ended before the tax was assessed, and expectancy was used in all other cases. See Ithaca Trust Company, Executor and Trustee, v. United States, 279 U. S. 151.

The right of the remaindermen also to pay their tax before they come into possession, in order to secure equal treatment in all estates, must be based not on actual experience, but on the value of the remainder interest at the time the remaindermen elect to pay, less the theoretical value of the annuity or life estate at that time. If the remaindermen elect to pay their tax at once after the death of the testator, the deduction is the assessed value of the life estate. If the remaindermen elect to pay after 5 years, let us say, while the annuitant is still living, the deduction which they get is based upon the expectancy of life of the annuitant or life tenant as of that date, and according to age at that date. The valuation of the life estate will, at that time, necessarily be less than it was before, but it will always be something.

We should bear in mind that although the will directs that all tax be paid out of the residuary estate, the remaindermen are not entitled to have the payment of their tax made in advance out of the estate because the income of the life tenant is diminished thereby: Constable's Estate, 299 Pa. 509. If remaindermen wish to pay the tax in advance, they must do so with their own money.

This system will produce some apparent inequalities in practice. If the life tenant dies before his expectation has run out, the Commonwealth will be in a sense overpaid; and if the life tenant outlives his expectation the Commonwealth will be underpaid, and the case will happen that the life tenancy will not last long enough to earn the money to pay the tax. This result is inseparable from our method of taxing life estates separately.

The remainderman ought to have a reasonable time after the death of the testator in which to learn what the assets and liabilities are and to make up his mind whether he will engage in the speculation upon the death of the life tenant which the law permits to him.

Executors' accounts are filed after 6 months, and normally they are audited and distribution is ordered within 1 year. Interest on unpaid inheritance tax, which is due, begins to run 1 year after the testator's death: section 38 of the Act of June 20, 1919, P. L. 521. By section 15 of the Act, as amended by the Act of July 12, 1923, P. L. 1078, the register is authorized to enforce the payment of tax which "shall remain due and unpaid for one year after decedent's death". By article I, section 3, the remainderman must give security to pay the tax

within 1 year, otherwise the tax becomes payable immediately, even though he is not in possession. This latter provision is not enforceable when the remainderman is not ascertained: Coxe's Estate, 193 Pa. 100; and it is not always enforced. Federal estate tax is payable at the end of a year; the widow must. elect within a year; and interest on legacies begins to run after a year.

These provisions of law form a surprisingly consistent system; and while not all of them are directly applicable to the present situation, I conclude from them all that the remainderman has at least a year in which to decide whether he will pay "immediately" or wait until he comes into possession. Whether he might have a longer time if the estate was unsettled, it is not necessary now to decide. If, therefore, the remainderman pays within a year (as he did here), he has a right to deduct from the principal of the estate the theoretical value of the annuity or life estate as of the testator's death.

While the Commonwealth has not appealed, the appeal throws the whole assessment open for correction of any error.

Evidence was offered that the executors by conversation among themselves elected to pay within the year, but I have not paid any regard to that testimony. It is what they did that counts.

The appeal from the register is sustained, and the tax is assessed as follows::

| | |
|---|---:|
| Value of estate as determined by the register's appraisement, exclusive of specific bequests and devises | $455,183.38 |
| Less theoretical value of widow's annuity as agreed | 72,276.00 |
| Amount taxable at 10% | $382,907.38 |
| Tax at 10% | $38,290.74 |
| Specific bequests and devises to the widow | $21,056.00 |
| Widow's annuity | 72,276.00 |
| Amount taxable at 2% | $93,332.00 |
| Tax at 2% | $1,866.64 |

*William M. Boenning*, for exceptant; *John Harper*, contra.

HENDERSON, J., November 10, 1933.—These exceptions were filed to the adjudication of the hearing judge upon an appeal from an appraisement for transfer inheritance tax purposes.

The decedent died May 2, 1931, leaving a will which gave his widow an annuity of $12,000 and sundry absolute minor bequests and devises, and he then gave the entire balance, including the remainder of the annuity fund upon the death of the widow, for charitable uses.

On August 1, 1931, the executors wrote to the register that they were desirous of securing the 5 percent discount allowed for prompt payment, and tendered a check for $21,508, made up as follows, according to their letter of the same date:

| | |
|---|---:|
| Collateral tax at 10% on $212,000 | $21,200.00 |
| Direct tax at 2% on $72,000 | 1,440.00 |
| | $22,640.00 |
| Less 5% discount | 1,132.00 |
| | $21,508.00 |

The register thereupon, on August 3, 1931, duly appointed Hugh J. McGinley appraiser "to make a fair and conscionable appraisement of said estate and to assess and fix the cash value of all annuities and life estates growing out of said estate."

On the same day, the register administered the oath to McGinley, who swore that he would "without prejudice or partiality, make a fair and conscionable appraisement of said estate, and assess and fix the cash value of all annuities and life estates growing out of said estate at the market value, as of the date of the death of decedent, for the purpose of ascertaining the amount of transfer inheritance tax due upon the same."

The appraiser on the same day made and filed the following appraisement:

"Aug. 3, 1931. Being unable at the present time to arrive at the net value of the estate and in order to receive the benefit of the discount for prompt payment, the (executor or administrator) desires to pay the tax on account of personal estate to the amount of $284,000.

| | |
|---|---|
| Tax on principal amount of............................ | $ 72,000.00 |
| Tax at 2%................................. | $1,440.00 |
| Less 5% ................................. | 72.00 |
| | $1,368.00 |
| Tax on principal amount of............................ | $212,000.00 |
| Tax at 10%................................. | $21,200.00 |
| Less 5% ................................. | 1,060.00 |
| | $20,140.00 |
| Tax 2% ................................. | 1,368.00 |
| Tax 10% ................................. | 20,140.00 |
| | $21,508.00" |

The following letter was annexed to this appraisement:

"Provident Trust Company of Philadelphia
Seventeenth & Chestnut Sts.

August 1, 1931

Estate of Clarence A. Rowell, deceased
Will No. 1767-1931

"William F. Campbell, Esq.,
Register of Wills of Philadelphia County,
City Hall, Philadelphia, Pa.
                    Transfer Inheritance Tax
                    Department—Attention of Mr. Shay

Dear Sir:

We enclose payment on account of direct and collateral transfer inheritance tax on the estate of Clarence A. Rowell, late a resident of Philadelphia County, who died on May 2, 1931, and whose will was probated May 17, 1931.

| | |
|---|---|
| Collateral tax—10% on $212,000........................ | $21,200.00 |
| Direct tax—2% on $72,000............................ | 1,440.00 |
| | $22,640.00 |
| Less 5% discount................................. | 1,132.00 |
| | $21,508.00 |

This is a payment on account only to secure the discount.
Please see that the usual countersigned receipt is issued.

                              Very truly yours,
LWVM.Q                        (Sgd.) L. W. VAN METER
enclosure.                          Assistant Trust Officer"

This appraisement was offered in evidence by the Commonwealth.

The Commonwealth now argues that this should not be considered an appraisement because there is no data as to the annuitant's age. The appraiser adopted the figure of $72,000 as the value of the annuity, and we must assume that he did his duty and after considering the facts arrived at that result.

It is conceded that at the age of the annuitant the value of the annuity according to the life tables was $72,000. The appraiser adopted this figure while the annuitant was living, and we may not say that he did not intend the plain and unambiguous import of what he signed, and permit him after her death to appraise the annuity as of that date.

Thereafter this appraisement was recorded in appraisement docket vol. 44, page 73, no. 8427, and the tax is marked paid on account August 3, 1931.

Grace R. Rowell, the widow and annuitant, died on October 4, 1931.

On April 29, 1932, the register appointed Harry A. Connor, and after being sworn he made and filed the following appraisement:

"Apr. 29 1932                          Partial payment.
  The trustees desire to pay inheritance tax on the following amounts:
                                                            $21,332.00
    Tax 2 percent.............................$    426.64
                                                            $170,907.38
    Tax 10 percent............................$17,090.74

    Total tax ..............................$17,517.38"

On January 23, 1933, the register appointed Harry A. Connor appraiser and administered the customary oath to him, and on the same day he made and filed the following appraisement:

"Jan 23 1933
  Personal estate as shown by inventory and appraisement
    filed 8/29/31 (HBG 9/3/31).........................$486,319.20
  Add additional assets incl in account....................     13.43

                                                          $486,332.63
  Deduct debts, expenses, etc. approved in account by
    adjudication 611-1932 ............................     42,093.25

  Real estate                                             $444,239.38
  Bungalow, garage, camp lands, and buildings, approxi-
    mately 89 acres in Laanna, Wayne and Pike Counties..   32,000.00

                                                          $476,239.38
  Deduct specific legacies to widow..............$  4,416.00
  Deduct specific bequest of bungalow in Laanna,
    to widow ............................... 16,640.00
                                             ————————$  21,056.00

                                                          $455,183.38
  Deduct amount set aside to provide an income of $1,000 per
    month to widow, Grace Rowell, for life...............$240.000.00

  Residuary ......................................$215,183.38
  The widow, Grace Rowell, died October 4, 1931,
    and actually received in annuities...........$5,066.67

Reappraised value of amount set aside to provide
widow's annuity, reappraised as of date of
death of widow, October 4, 1931......................$216,197.93
To which add value of residuary....................... 215,183.38

$431,381.31

Tax 10 percent....................................... 43,138.13

Actual annuity received by widow.............$ 5,066.67
Specific bequests to widow................... 21,056.00

$26,122.67

Tax 2 percent...............................$ 522.45
Total tax ................................. 43,660.58
Deduct credit for tax paid 8/3/31 and 4/29/32.. 40,157.38

Balance due ............................. $3,503.20
No interest or penalty charged, estate in litigation.
Former appraisements filed 8/3/31 and 4/29/32."

It should be observed that in the first appraisement made by McGinley in the lifetime of the widow, her annuity is appraised at $72,000, based on her expectancy of life as fixed by the life tables as of the date of the death of the decedent, whereas in the last appraisement, the widow having lived only 5 months and a day, it is "reappraised as of the date of the death of the widow, Oct. 4, 1931" at the actual amount received by her—$5,066.67.

This appraisement appears to be full and complete and to include the items in the two earlier appraisements. Whatever authority there may be for filing supplemental appraisements to cover additional assets, we are clear that when an annuity is once appraised, as was this one on August 3, 1931, at $72,000, and the executor indicated that the tax on the remainder was to be paid within a year of the death, there is no warrant in law for reappraising the widow's annuity as of the date of her death. The oath of the appraiser requires him to value the annuity "as of the date of death [of the decedent] May 2, 1931."

This is in accordance with the rule of law as defined by Justice Kephart in Clabby's Estate, 308 Pa. 287, 292: "The test is, value at the date of death."

We are therefore of opinion that the appraisement which is before us on appeal may not revalue the widow's annuity of $12,000 a year as of the date of her death. It was valued at $72,000 as of the death of the testator as required by the act, and there is no authority to revalue it as of the date of her death.

This will directs the payment of all inheritance taxes out of the residuary estate. Were it not for this fact, this annuitant would be subjected to a tax of 2 percent on $72,000 or the sum of $1,440, whereas she has only received under this annuity $5,066.67. This would be a real hardship. The act should be modified by the legislature to meet such a situation.

Supplemental appraisements may be made but only for additional unappraised assets, and for life or other estates which have not been appraised.

The hearing judge correctly held that this annuity should be appraised as of the date of death of this decedent; this was properly done on August 3, 1931, and we know of no authority for a reappraisement.

The assessment as made by the hearing judge is confirmed, for the reasons herein given, and the exceptions are dismissed.