### Youngblood's Estate.

Argued March 5, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

552

*A. L. Turner,* of *Jenkins, Turner & Jenkins,* for appellants.

*Neil Chrisman,* and with him *Lawrence B. Jones,* for appellee.

OPINION BY BALDRIGE, J., April 22, 1935:

Sarah N. Youngblood died on the 22d day of May, 1929, first having made her last will and testament, wherein she appointed her husband executor and trustee. After providing for the payment of annuities to her mother and aunt, the testatrix, in the third paragraph of her will, which gives rise to the main controversy, directed as follows:

"At the expiration of three years from my decease, I direct my Executor and Trustee to transfer the following named stock in the amount named, absolutely to my brother and sisters: to Lucy Howell, 16 shares of Woolworth stock, par value of $25, or 40 shares if changed to $10 par value; to Eleanor Shoemaker, Jane Schooley, Ruth Roberts and Hazel Trescott, each of them 16 shares of said Woolworth stock, par value $25, or 40 shares if changed to $10 par value; to my brother Thomas Nixon 10 shares of said Woolworth stock, par value $25, or 25 shares if changed to $10 par value."

All the sisters and the brother named in the will were living at the death of the testatrix. Her estate was appraised at $70,901, and the expenses of settlement thereof amounted to $13,450.

Shortly after the testatrix's death, her personal property was appraised by the inheritance tax appraiser of the Commonwealth of Pennsylvania, and in his return filed with the auditor general on or about July 19, 1929, the value of the Woolworth stock was fixed at $202 per share. The collateral inheritance tax on that portion bequeathed to the brother and sisters, amounting to $1,818, less 5% for discount by reason of the executor's paying the tax within the prescribed period, was paid by the executor. The par value of the stock subsequent to the appraisement and payment of the tax, and before the expiration of three years, was reduced, and the number of shares bequeathed to each legatee was accordingly increased under the terms of the will in the ratio of 2½ for 1. The average market value of the stock on May 23, 1932, when the right of possession accrued, was 29⅛.

A citation was issued by the Orphans' Court of Luzerne County upon a petition filed by appellants directed to the executor to show cause why he should not turn over certain stock which the will of the decedent directed him to transfer to the petitioners three years after her death. After hearing was had, a final decree was entered, directing the executor to transfer to the legatees the stock bequeathed to them upon the payment to him of their proportionate share of the taxes advanced by him. From this decree an appeal was taken.

Three questions are raised in this appeal:

Were the legacies set forth in the paragraph above quoted vested in the appellants on May 22, 1929, date of testatrix's death, or contingent because the actual

transfer thereof was postponed for three years by the provision in the will?

Did the testatrix direct the payment of the inheritance tax on these bequests out of the residuary estate?

Did the failure of the appellants to take any action toward the settlement of their respective shares of the inheritance tax assessed on their legacies preclude them from subsequently objecting to the amount in payment of the said taxes by the executor?

1. The well-established rule of law is that an interest is not considered to be contingent unless it is impossible to construe it as vested. This rule does not yield to a reasonable inference that the testatrix intended a contingent remainder. The intention must appear, not only plainly, but also indisputably. "Where a legacy is made payable at a future time, certain to arrive, and not subject to condition precedent, it is vested where there is a person in esse at the time of testator's death capable of taking when the time arrives, although his interest be liable to be defeated altogether by his own death": McCauley's Est., 257 Pa. 377, 382, 101 A. 827. See, also, Brown's Est., 289 Pa. 101, 137 A. 132; Reed's Est., 307 Pa. 482, 161 A. 729; Gelm's Est., 61 Pa. Superior Ct. 228; Berg's Est., 96 Pa. Superior Ct. 125.

A reading of the will and the application of the well-known rules of construction, which are fully set forth in the above-cited cases, leave no doubt in our mind that the legacies were vested, and that was the conclusion reached by the learned court below.

2. Under the provisions of the Act of June 20, 1919, P. L. 521, and its amendments (72 PS §2301), inheritance taxes are not assessed against the estate of a testator, but against the legatees and devisees, as what is taxed is the right of succession or the privilege of receiving the property possessed by decedent, as the

plain intent of this statute is to charge the beneficiary. The executor, therefore, was not required to make a return and pay the inheritance tax on the bequests to the appellants, unless the testatrix clearly indicated, either expressly or by implication, that the bequests were given free of the tax: Brown's Est., 208 Pa. 161, 164, 57 A. 360; Anderson's Est., 312 Pa. 180, 182, 167 A. 329; Elliott's Est., 113 Pa. Superior Ct. 350, 355, 173 A. 880.

The only reference to payment of taxes is in the seventh item of the will, which reads: "All other property of whatsoever nature is left to my husband, in trust, and I empower and authorize him to sell such stocks as he thinks proper or necessary for the payment of taxes and costs." The taxes mentioned therein evidently referred to those the estate would be compelled to pay. The testatrix no doubt knew that there would be certain taxes due from the estate, independent of any that would be payable on the legacies, which the executor would be required to pay.

In Tallman's Est., 10 D. & C. 89, the testator gave $1,000 to each of his two sisters. In the sixth item of his will, he provided: "I direct that all inheritance taxes upon my estate, both as to life estate and the estate in remainder, shall be paid by my executor in due course." The auditing judge awarded the two legacies of $1,000, subject to payment of tax thereon. Upon exceptions filed, Judge LAMORELLE, in passing upon the contention that the testator intended to treat the transfer inheritance tax as an administration expense, sustained the auditing judge's adjudication.

We think the will did not impose the payment of the inheritance tax on the residuary estate, and, consequently, it is not liable therefor.

3. We now come to the last, and what we deem the most important, question raised. Section 3 of the Act of June 20, 1919, supra (72 PS §2304), provides that

where a bequest "is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estate for life or years. The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner, but the owner may pay the tax at any time prior to his coming into possession. In such case the tax shall be assessed on the value of the estate at the time of the payment of the tax after deducting the value of the life-estate or estates for years ...... The owner of any such personal estate, passing to him from a resident decedent, shall make a full return of the same to the register of wills within one year from the death of the decedent and within that period enter into security for the payment of the tax, to the satisfaction of such register. In case of failure so to do, the tax shall be immediately payable."

Notwithstanding the legacies were vested, the stock was not transmitted to, nor did it come into the actual possession of, the appellants at the death of the decedent, but three years thereafter.

In Coxe's Estate, 181 Pa. 369, 37 A. 517, the testator left his whole estate, less some unimportant legacies, in trust, to his widow for life, with remainders to his nephews and nieces living at his death and to the issue of the nephews and nieces. The question there was whether the tax on the remainders could be demanded from the executor under the Act of May 6, 1887, P. L. 79, which has since been repealed. But the phraseology of the portion of the Act of 1919, supra, which we are considering, is practically the same as the Act of 1887. The court held that it was the duty of the owner, who was the remainderman and the one per-

sonally liable, to make a return of the estate to the register of wills and to pay the tax at any time prior to his coming into possession; that the intent of the statute was to charge the beneficiary of the estate when he "shall come into actual possession;" that the executors were not in any sense "owners" within the language of the act and could not be compelled to make present payment of the tax as they were not the parties primarily charged with its payment, and they were not responsible for the owner's failure to make a return and enter security. In the same case, 193 Pa. 100, 44 A. 256, the court emphasized forcibly again that it is the actual possession of the estate alone which creates the liability to pay the tax and that the liability does not arise until after the termination of the estate for life or years; and it is the value of the property then which is the basis of the assessment on which the tax must be declared. Attention is there called to the difficulty that might arise if the testator bequeathed stock, the value of which nobody could possibly tell at the time the remainderman receives it. There might well be, as here, a serious impairment of value when the ownership actually vests. See, also, Shugars et al. v. Chamberlain A. E., Inc., 284 Pa. 200, 130 A. 426.

The appellants could have protected themselves against such a contingency by making a return and entering security within one year as the act requires. The taxes then would not have been due until the end of the three-year-period, and they would have been based on the value of the stock at that time. But as no return was made or security entered, the taxes became immediately payable; that is, at the termination of one year from the death of the testatrix.

Finally, the appellee asserts that as no appeal was taken within thirty days from the appraisement under §13, Art. II, of the Act of 1919, supra (72 PS §2327),

the legatees can not now question its final binding effect on them.

By a reference to the appraisement of the 90 shares of Woolworth stock, we find "Coll bequest at $18,180 at ten per cent ...... $1,818." It thus appears that the particular estate for three years and the interest of the appellants were not separately appraised as the law requires. Furthermore, this appraisement was not made with the knowledge of, or notice thereafter to, the appellants.

In Montgomery's Est., 63 Pa. Superior Ct. 318, 323, we said, in referring to the third section of the Act of 1887, supra: "The difficulty however that presents itself is that the appraisement made in this case is not in conformity with the act. It does not purport to be an appraisement of the several interests of the parties, and it was the duty of the appraiser to make an appraisement of the life interests, and failing to comply with the requirements of the act, the appraisement was as in Burkhart's Est., 25 Pa. Superior Ct. 514, 'no appraisement at all.' There is no proof that notice was given to any one of the parties in interest, and apart from this as stated before, there is nothing from which the remaindermen could appeal. As far as the remaindermen are concerned, when the estate finally passes to them, the value of it can be fixed as required by the act."

The appellants' omission to make a return and enter bond did not warrant the executor's paying the full amount of this tax with the estate's money and charging the respective shares of the appellants therewith. The estate was not chargeable with the amount he paid, and the tax was not then due. It was a gratuitous payment by him: Handley's Est., 181 Pa. 339, 348, 37 A. 587; Constable's Est., 299 Pa. 509, 514, 149 A. 743.

The appraisement not having been taken in con-

formity with the law, the appellants are not prevented from attacking it in so far as their interests therein are concerned.

Decree of the learned court below is reversed, and the executor is directed to turn over to the appellants the certificates of stock bequeathed to them by the will of the testatrix, upon the payment of the amount of tax assessed, based upon the value of the stock at the termination of one year from the death of the decedent. Costs to be equally divided between appellants and appellee.