## Edwards' Estate

*George T. Butler* and *Ralph S. Graham,* for Accountants.

*Winfield W. Crawford,* for Exceptant.

*Elgin E. Weest,* for Commonwealth.

VAN RODEN, P. J., April 15, 1946.—Decedent, J. R. Lincoln Edwards, also known as Lincoln Edwards, died December 30, 1944, leaving a will dated September 25, 1944, and an undated codicil thereto, both in his own handwriting. Two sons-in-law of testator,

the executors named in the will, duly qualified, and are the accountants in this proceeding.

Testator was survived by his two daughters: Dorothy E. Walton and Gertrude E. Riley. His wife, Ida W. Edwards (also known as Ida May Edwards), predeceased him on January 14, 1944.

The executors have filed their first account, which is presently before the court for audit.

The transfer inheritance tax of $300, being at the rate of 10 percent upon two pecuniary legacies totalling $3,000, was paid by the executors as stated in their petition for distribution.

Helen C. Kelley, one of the two pecuniary legatees under testator's will, filed an exception to the executors' account and to their petition for distribution in the above estate, stating that "the collateral inheritance tax of 10 percent assessable on her inheritance is charged to same instead of being charged to the residuary estate".

The court is informed that testator was actively engaged in the tea and coffee business at 115 South Front Street, Philadelphia, Pa., for more than 20 years prior to his retirement from business, as of August 31, 1942; during a long period thereof the exceptant, Miss Helen C. Kelley, was his secretary at said place of business; and testator and his wife had employed Cora S. Davis, the other pecuniary legatee, as a maid and housekeeper at their residence for many years prior to their respective deaths.

By his holographic will, testator provided, inter alia, as follows:

"Second I do will and bequeath to Cora S. Davis the sum of One thousand Dollar outright at my death

"Third I do will and bequeath to Helen C. Kelley the sum of Two thousand Dollars outright at my death

"Fourth I do will and bequeath to my daughter Dorothy E. Walton one fifth of balance of my estate

"Fifth I do will and bequeath to my daughter Gertrude E. Riley four fifths of balance of my Estate."

All of the parties in interest are living and of full age; and decedent did not marry after the execution of his will, and there were no children born to or adopted by him thereafter.

The question to be decided is: Did testator intend that the transfer inheritance tax on the pecuniary bequests should be paid out of the residuary estate?

Counsel for the exceptant bases his contention that such was the intention of testator upon the use of the word "outright" in paragraph 3 of the will (which word was used also in paragraph 2, relating to the legacy to Cora S. Davis). He cites no references or decisions directly in point to support this position; and the cases cited in his briefs do not go very far by way of sustaining his position. In Brown's Estate, 208 Pa. 161, the Court held it to be apparent from the wording of the will that testator intended the tax to be charged against the income before distribution to the legatees. In Anderson's Estate, 312 Pa. 180, there was a specific direction to pay the inheritance tax out of the residuary estate, and the court would not adopt the suggested interpretation that testator meant only taxes "due by me". Likewise, in Horn Estate, 351 Pa. 131, express provisions were contained in the will to pay the inheritance tax out of the residuary estate. Comment will be made later upon Rettew's Estate, 142 Pa. Superior Ct. 335.

Consideration has been given to the argument of counsel for exceptant that the court would not be justified in construing testator's will by eliminating or disregarding the word "outright", and that the rule of construction presumes that testator "intended to mean something" by the inclusion of that word in

his will, that, as stated in Horn's Estate supra, the preferable construction is that every word is operative.

The question involved is, therefore, narrowed down to a determination of the significance of the word "outright" as used in the second and third paragraphs of the will.

Counsel for the executors argues that the payment by each pecuniary legatee of the inheritance tax assessed upon her legacy would be: (1) Be in compliance with the statutory provisions relating thereto; (2) would be in accordance with the application of the pertinent principles of law, and (3) it would carry out the intention of testator as ascertained from the proper construction of his will and codicil.

It appears that in accordance with the requirements of section 16 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, 72 PS §2352, as amended by the Act of July 12, 1923, P. L. 1078, sec. 4, the executors paid the 10 percent tax on both of the pecuniary legacies bequeathed by testator's will.

Unless the presence of the word "outright" contained in the provisions for the two pecuniary legacies alters the situation as contended by exceptant, it is the further duty of the executors under the provisions of said statute and of section 48.1 of the Fiduciaries Act of June 7, 1917, P. L. 447, as added by section 1 of the Act of July 2, 1937, P. L. 2762, 20 PS §844, to deduct the amount of said tax before making distribution to either of said legatees. See McLure Appeal, 347 Pa. 481 at 485 (1943), Horn Estate, 351 Pa. 131 at 135 (1945). See also Tallman's Estate, 10 D. & C. 89 (1928), where Lamorelle, P. J., stated, inter alia, at page 91:

"Section 16 of the Act of June 20, 1919, P. L. 521, provides that the executor or administrator or other trustee paying any legacy or share in the distribution

of any estate of a resident decedent subject to the said tax shall deduct therefrom the tax."

Counsel for the executors in their brief have referred to a number of decisions of this and other jurisdictions which have a relevant bearing upon the general question as to whether the above pecuniary legatees or the two residuary legatees should assume the payment of the transfer inheritance taxes of $300 which were paid by the executors in this estate, and we will proceed to consider them.

Brown's Estate, 12 Dist. R. 123 (1903), where Judge Penrose of the Orphans' Court of Philadelphia County, in dismissing the exceptions to the adjudication (which was affirmed by the Supreme Court in 208 Pa. 161), stated in his opinion, inter alia:

"While collateral inheritance tax or succession tax is, technically, a charge, not upon the estate of the decedent, but upon the right of the legatee or distributee to receive the bounty thus coming to him, the latter may, of course, be relieved of the burden by the provisions of the will. No particular form of words is required for this purpose, and the question is always one of intention, to be gathered from the will in its entirety, construed in the light of the circumstances surrounding the testator at the time of its execution. The authorities on the subject are referred to in Bispham's Estate, 24 W. N. C. 79, where it was held that the tax was payable from the general estate where the gift was of the annual 'net' sum of $1200, for life."

Holbrook's Estate, 3 Pa. C. C. 265 (1887). Judge Penrose said at page 270:

"The only remaining question is with regard to the collateral inheritance tax upon the annuity. The phraseology of the gift is peculiar. The annuitant is 'to receive *not less than*' the sum specified [$1500.] in each year. The testator is presumed to have known that the tax was payable, and his language is to be

interpreted in the light of such knowledge. If the tax is deducted from the sum paid to the annuitant in any one year, it is clear that the express terms of the gift are not complied with; and hence, it would seem, it might fairly be implied that the tax was to be borne by the general estate. The majority of the court, however, are of opinion that the *intention to relieve the annuitant is not expressed with sufficient clearness*, and the exception to the ruling of the auditing judge in this respect, cannot, therefore, be sustained." (Italics supplied.)

In the case of Sherman et al., Executors, v. Moore et al., 89 Conn. 190, 93 Atl. 241 (1915), the 23rd paragraph of testatrix's will provided (p. 191):

" 'It is my will that the foregoing devises, legacies and bequests shall be *paid in full* before any of the devises, legacies or bequests hereinafter made in this will are paid, and to the exclusion of those hereinafter made if my estate should not be sufficient to pay all of the devises, legacies and bequests aforesaid *in full.*' " (Italics supplied.)

Prentice, C. J., of the Supreme Court, in construing the will, and in advising the Superior Court that the executors should pay the cash legacies in question, after deducting from each the amount of inheritance tax chargeable to it under the laws of the State of Connecticut, and that such amounts are not payable out of the residuary estate, stated, inter alia, at pages 193, 194 and 195 thereof:

"That portion of Mrs. Sherman's will which is chiefly relied upon as indicative of an intent on her part that the legacies in question should be paid free of tax is the twenty-third paragraph. We find it impossible to gather from its language, whether read by itself or in the light of surrounding circumstances, the conviction that she had any thought in mind of succession taxes, or intent to make the legacies free of

them. If the purpose of the paragraph was to provide for their payment out of the residue, a few simple words would have sufficed, . . ."

"She provided for payment 'in full' of the preceding legacies, and it is urged that this imports a payment free of tax. It is evident from the context, as we have analyzed it, that what she had in mind and intended was payment without diminution by reason of subsequent gifts. It was her manner of expressing the desired priority, further elaborated and defined by the immediately following words. Beyond this the imposition of the tax would not operate to reduce the legacies. It would only reduce the amount received in hand by the legatees. *Turner v. Mullineux*, 1 Johns. & Hem. 334, 335. *The legacies would be paid in full in so far as the estate was concerned* even if the State did impose its burdens upon them, and exact its toll before passing them over to the beneficiaries. *Matter of Estate of Swift*, 137 N. Y. 77, 87, 32 N. E. 1096; *In re Marcus* (1887), 56 L. J. Rep. (N. S.) 830, 831." (Italics supplied.)

In the case of McDonald's Estate, 314 Ill. App. 148, 41 N. E. (2d) 128, the will provided, inter alia (p. 149) :

" 'Fifth:—I hereby give, devise and bequeath to Adam J. Henning from the said fund above referred to the sum of Four thousand and 00/100 ($4,000.00) Dollars, and this legacy shall in no wise abate if there is sufficient property in my estate to pay same *in full* after payment of all debts.' " (Italics supplied.)

This was construed by the appellate court as requiring the payment by the legatee of the inheritance tax upon the legacy. In the opinion filed April 8, 1942, affirming the lower court, at page 150 it is stated, inter alia:

"It is considered competent for a testator to specify what property shall assume the burden of inheritance tax on the transfer or the right of succession of his

estate. For example, he may provide that such taxes shall be paid out of the general or residuary estate, or out of a particular fund. Since the effect of such a provision is to increase the gift, the *intent of the testator to make such a gift will not be drawn from vague or uncertain language.* The question depends upon the intent of the testator as set forth in his will. 28 Am. Jur. 137, par. 280." (Italics supplied.)

And at page 151:

*"We find nothing in this will directing the executor to pay the inheritance taxes from the general assets of the estate, nor do we find any provision that such tax is to be paid from a designated fund, nor do we find that the legacy to appellant is expressly given tax free, nor do we find that the testatrix used words in connection with appellant's legacy evincing an intention that he should receive the same free from the payment of inheritance taxes.* The only provision is that his legacy shall not abate so long as there is sufficient property in the estate to pay the same *in full."* (Italics supplied.)

Again at page 152:

"We find in the will of the testatrix in this case that she made the payment of the general legacy to appellant an express charge upon all of her estate, thus indicating a preference for such legatee, but we do not find that the terms of the will go further than this."

In Tallman's Estate, 10 D. & C. 89 (1928) supra, testator provided by the sixth item of his will:

"I direct that all inheritance taxes upon my estate, both as to life estate and the estate in remainder, shall be paid by my executor in due course."

In dismissing the exceptions to the adjudication, in which the equitable life estates and two legacies of $1,000 each were awarded subject to the payment of the tax thereon, Lamorelle, P. J., held at page 90:

"The result of the authorities is, that *to exempt a legacy from the payment of tax, it must be expressly stated that it is given free of tax, or, in the absence of such express statement, the intent must necessarily be implied from the language used.* With this principle in mind, let us consider the language of the sixth item. It is a mere statement that the executor shall pay the tax; *there is no direction how it shall be ultimately charged.* There being no such direction, the general principle of law that *each legatee must pay his own tax is applicable.*" (Italics supplied.)

See also Youngblood's Estate, 117 Pa. Superior Ct. 550, 555 (1935).

In Rettew's Estate, 142 Pa. Superior Ct. 335 (1940), which is referred to in exceptant's brief, the adjudication of Judge Sinkler of the Orphans' Court of Philadelphia County, which was confirmed absolutely by the court in banc, and also affirmed by the Superior Court on appeal, in construing the will and codicils of testatrix, held, inter alia:

"Except in the case of the Laurel Hill Cemetery bequest, (which was to be paid clear of all direct inheritance, or other taxes) *there is no language in the will which demonstrates a clear intention on the part of the testatrix that the legacies and devises made by her will and the codicils thereto should be tax-free. Accordingly, the burden of the inheritance tax,* except in the case of the Laurel Hill Cemetery bequest, *must be borne by each individual legatee and devisee.* This conclusion is in conformity with the general rule of law applicable to cases such as the present—that the transfer inheritance tax and the Federal estate tax should be borne by the respective legatees and devisees unless a manifest intention be shown to the contrary, that is, *that it be clearly expressed that these taxes be borne by the residuary legatee alone. This rule is*

*a fair one, is of general application, and controls this case. . . .*" (Italics supplied.)

It is clear from a careful consideration of the above reported decisions relating to issues somewhat analogous to the question before the court in the case at bar that there is no language in the will and codicil of the present testator which would show a manifest intention on his part to cast the burden of the payment of the inheritance taxes assessable on the two pecuniary legacies upon his two daughters as the residuary legatees thereunder.

In view of the principles of law laid down by the courts, and more particularly with reference to those herein discussed, it becomes necessary for the court to examine the entire will and codicil of testator, as well as any circumstances surrounding testator at the time of execution thereof, to determine the true intent of his last will as respects the payment of the transfer inheritance taxes assessable upon the two pecuniary legacies.

The general scheme of testator's holographic will and codicil was plainly to provide for: (1) The payment of his just debts; (2) the payment of pecuniary legacies in the total amount of $3,000; (3) the division of the balance of his estate between his two daughters in the manner indicated therein, and (4) the appointment of his two sons-in-law as the executors thereof.

Taking up the contention of exceptant that testator intended by the use of the word "outright" in the second and third paragraphs of his will, to bequeath these two legacies in the full sum of $1,000 and $2,000 respectively, without deduction for transfer inheritance tax, examination of some of the modern dictionary definitions of the word "outright" discloses the following:

Webster's New International Dictionary of the English Language (1938), vol. II, p. 1734, as adverb:

1. Straight ahead or straight onward; directly. (Now rare)

2. (Obs.) a. Immediately;

b. Continuously or consecutively.

3. a. To or in entirety; completely;

b. Completely in one act or transaction;

c. Unreservedly; as, to chide or laugh outright.

As adjective:

1. Proceeding directly onward; as, an outright course;

2. Direct, straightforward; as, outright expression;

3. Complete; whole; as, the outright expense.

Funk and Wagnalls New Standard Dictionary of the English Language (1935), vol. II, p. 1756:

1. Without reservation or limitation; to the whole extent; altogether; entirely; utterly; openly.

2. Without delay; on the spot; immediately.

3. Directly onward; straight ahead.

Oxford English Dictionary (1933) vol. VII, p. 268: as adverb:

1. Of direction in space; straight out; directly onward; straight ahead. (Now rare)

2. Of time: Straight, straightway; forthwith, immediately, without delay. Obs.

3. So that the act is finished at once; altogether, entirely; to kill outright, i. e. so that the victim dies on the spot; to sell or purchase outright, i. e. so that the thing disposed of becomes at once the full property of the buyer.

4. To the full extent, fully out, completely, entirely, quite; without reservation or limitation; openly, without reserve of manner or expression.

As adjective:

1. Directed or going straight on; (rare)

2. Direct; downright; thorough, out-and-out;

3. Complete, entire, total. Mod. Newspaper: He mentioned the probable outright cost of such an undertaking.

Words and Phrases (Permanent Edition). vol. 30, p. 551, citing Hughes v. First State Bank of Wagoner, 235 Pac. 1097, 1099, 106 Okl. 146 (1925):

"Statement in contract of sale of majority of stock of bank, that other stock to be turned over as guaranty of paper held by bank should be property of parties 'outright', gave them such property free from limitations or reservations, outright meaning free from reserve or restraint; direct; positive; downright; without reservation or limitation; to the whole extent; altogether; entirely; utterly; openly."

Exceptant contends that testator used the word "outright" to mean: a bequest to her of $2,000 free of inheritance tax, i. e., the sum of money so bequeathed in its "entirety; wholly; completely; entirely".

The executors contend that the word "outright", which appears twice in precisely the same manner in testator's will, was used by him more in the sense of: immediately; without delay; unreservedly; without reservation or limitation.

It must be presumed that testator knew that the two pecuniary bequests that he was leaving to persons, unrelated to him but then or formerly in his employ, would be subject to the payment of the 10 percent Pennsylvania transfer inheritance tax imposed by law. If he desired such inheritance tax to be borne by and paid out of his general estate before distribution thereof to his residuary legatee, he could readily have done so in clear and unequivocal language, and thereby enabled the two pecuniary legatees to receive their respective legacies free of said tax. This, however, he failed to do, nor does such appear to have been his intention, as he nowhere speaks of the tax, directly or indirectly.

After careful consideration of all the provisions of the will, as well as the decisions of the courts herein-

above referred to, it is the opinion of the court that testator did not intend by the use of the word "outright" to make the two pecuniary legacies tax free.

Such a conclusion is not inconsistent with the contention of the learned counsel for exceptant where he states in his very able brief: "If we consider it (the word "outright") in its 'ordinary and grammatical sense' it would be a bequest of Two Thousand Dollars completely, wholly, or entirely. If it should be held that the use of the word 'outright' indicated an intention on the part of the Testator to bequeath to the Exceptant Two Thousand Dollars without deductions, it then necessarily follows that it was the intention of the testator that the inheritance tax be paid out of the residue of the estate".

As stated in the opinion of the court in the case of Sherman et al. v. Moore et al., supra, "the legacies would be paid in full insofar as the estate was concerned even if the State did impose its burdens upon them, and exact its toll before passing them over to the beneficiaries".

If, in the case at bar, testator intended to make a further gift to the pecuniary legatees in the form of payment of the transfer inheritance tax by law imposed upon the right of the legatees to receive their legacies, he could and should have "expressly stated that it is given free of tax, or in the absence of such express statement, the intent must necessarily be implied from the language used": Tallman's Estate, supra. If it should be suggested that this was not done by testator because he did not know of the existence of the transfer inheritance tax, then he was incapable of having any intention of increasing his gifts to the pecuniary legatees by the payment of this tax.

For the reasons herein stated, the exception to the account and petition for distribution, filed by Helen C. Kelley, one of the specific legatees, is dismissed.