## CLYMER *versus* THE COMMONWEALTH.

ERROR to the Court of Common Pleas of *Bucks county.*

This was an action of debt by the Commonwealth of Pennsylvania against Thomas W. Clymer, executor, &c., of Francis Clymer, deceased, in which a case was stated for the opinion of the court. Francis Clymer died on the 4th day of April 1864, leaving a will, of which Thomas W. Clymer is the executor.

Part of the personal estate of the decedent, was $9000 of United States 5-20 bonds, appraised at par. The whole of the testator's estate was given to collateral heirs. The executor paid the register of wills, collateral inheritance tax on the appraised value of the testator's real estate and on the clear value of the personal estate, with the exception of the item of $9000 U. S. 5-20 bonds, above referred to.

[Strode *v.* Commonwealth.]

"The question for the opinion of the court is, whether the defendant is bound to pay the Commonwealth a collateral inherit- · ance tax upon that part of the decedent's estate which consists of the United States 5-20 bonds. If the court shall be of the opinion that the $9000 of United States stock is subject to tax, judgment is to be entered for the plaintiff for $450. But if the court shall be of the opinion that the United States stock is not subject to such tax, the judgment is to be entered for the defendant."

The court below (Chapman, P. J.) delivered the following opinion :—

"It is conceded that an appraisement, unappealed from, does not fix the decedent's estate with a liability to pay a collateral inheritance tax thereon, but the owner of the estate may deny the liability in answer to a *scire facias* issued to compel payment of the tax assessed. Nor will the position he denied, that a tax upon the stock of the United States cannot be levied by a state, consistently with the constitution and laws of the United States, and it may be admitted that the proviso of the Act of February 25th 1862, exempts from state taxation all bonds or other securities of the United States. But is such a thing now contemplated ? The collateral inheritance tax law imposes a tax or duty of $5 on every $100 of the clear value of all estates, real, personal and mixed, of every kind whatsoever, passing from any person, who may die seised or possessed of such estate, being within this Commonwealth, by will or under the intestate laws thereof, or any part of such estate or estates, or interest therein transferred by deed, grant, bargain or sale made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor, to any person or persons in trust or otherwise, other than to the use of father, mother, husband, wife, children or lineal descendants, to be paid for the use of the Commonwealth. The securities, amounting to $9000, are not specially bequeathed, and perhaps it would make no difference if they were. But the view entertained by the court is, that no Act of Congress impinges upon the collateral inheritance law. This law contemplates the imposition of no tax such as Congress intended to prohibit. It is called a tax or duty, but has little, if any, analogy to a tax in the usual acceptation of the term. It cannot be regarded as a penalty exactly, but it approximates that as nearly as it does an ordinary tax. It is assessed but once. The claim is made as against a particular class of persons. It is the relation of the person, who claims the estate, to the decedent, which constitutes the ground upon which the abatement is authorized. This is the condition upon which the collateral beneficiary is entitled to receive a decedent's estate. The legislature have a constitutional right to prescribe the mode of descent of intestates' estates, and as the

right to make a will is by legislative authority, what is to prevent the legislature from declaring prospectively, that legitimate and illegitimate children shall take in equal shares, even against the attempt of the parent to the contrary by will ?　Now this is not to be viewed as a tax assessed upon the estate of the decedent or of any one, but a restriction upon the right of acquisition by those who under the law regulating the transmission of property are entitled to take as beneficiaries without consideration.　The state is made one of the beneficiaries.　It lays its hand upon estates under such circumstances, and claims a share, and whether the share is exacted as a tax or duty or whatsoever else, or the machinery employed in levying an ordinary tax is adopted or not, is of no consequence.　The constitutional authority of the state cannot be denied: Short's Estate, 4 Harris 63.　The act of the legislature is not liable to the imputation that it countenances the appropriation of private property for public use without consideration, for the estate never vests without the charge.　If the position of the defendant were correct, supposing a decedent's estate consisted wholly of United States securities, no abatement could be made on account of fees of officers, &c., for this description of property would be beyond the reach of state legislation, and the executors would have to pay out of their own pockets, whatever is prescribed by the fee bill or tax law.　On the supposition that the estate consisted wholly of interest-bearing notes, which would come within the term ' other securities' as used in the proviso to the Act of February 25th 1862, and recognised as money, it can hardly be supposed the claim of exemption would be asserted, and as the case stands no difference is perceived.　It may be said in conclusion, if there be no specific bequest of these bonds to the legatees, what have we to do with them in deciding this question ?　It is the clear value of the estate passing to collateral heirs we are to look to, and that cannot be ascertained until the debts are paid.　The clear value for distribution must be exhibited by the executors in their settlement, and from that the state is to take its share, and we cannot inquire into the source from which that balance is made up.　Should these bonds pass into the hands of the legatees, whether they can then be taxed for state, county or township purposes, will present a very different question from the present. But if they can now be exempted from the collateral inheritance tax, we can readily perceive how uniformly all other property that would not, would first be taken as the fund for the payment of debts or distribution among lineal descendants."

Judgment entered in favour of the plaintiff for $450.

The error assigned was, directing the judgment to be entered in favour of the plaintiff on the case stated.

*G. Lear* and *Chapman Biddle,* for plaintiff in error.—The

appraisement establishes nothing more than the *value* of the estate: Commonwealth *v.* Freedley, 9 Harris 36; Stinger *v.* Commonwealth, 2 Casey 424; Same *v.* Same, Id. 430. Taxation of securities created by Congress is impliedly forbidden by the constitution, as well as expressly by the Act of February 25th 1862: McCulloch *v.* Maryland, 4 Wheat. 436; Osborn *v.* U. S. Bank, 9 Id. 859: Weston *v.* Charleston, 2 Peters 467; Bank of Commerce *v.* New York, 2 Black 620; Bank-Tax Case, 2 Wallace 200.

No particular species of tax is referred to in the Act of Congress—the securities are to " be exempt from *taxation.*" The collateral tax, although now to be paid but once, may be by same authority levied annually. The collateral tax is used for the same purposes as other taxes. The tax is on the estate, not on the person: Act of April 10th 1849, § 14, Pamph. L. 572; Act of January 23d 1850, § 1, Pamph. L. 7; Commonwealth *v.* Smith, 5 Barr 144. From the New York cases, it is apparent that there is no distinction between the " clear value of the estate" and the securities composing it.

*Henry P. Ross,* for defendant in error.—The Commonwealth does not ask to tax United States securities worth $9000; but that amount of the value of the estate of the decedent. It matters not how the testator has invested his estate; she taxes the balance converted into money. The executor has no beneficial ownership in them: he may convert them into cash, and the legatees accepting them at their value is a conversion into cash. In fact the will worked a conversion by bequeathing the estate as money. They are subject to commissions and legacy-duty as money. Their *value* is no less liable to the tax than if the executor had paid the legacies by similar bonds belonging to himself.

But the legatees can claim no more than the Statute of Wills gives them; if it were not for that and the Statute of Distributions the whole would vest in the Commonwealth: Commonwealth *v.* Crawford, 1 Watts 484; and being hers she could give it on such conditions as she pleased.

The opinion of the court was delivered, March 26th 1866, by

Woodward, C. J.—The simple question is, whether our collateral inheritance tax is applicable to that part of the decedent's estate which consisted of bonds of the United States, that were by law exempted from state taxation. And the opinion of the learned judge below is so satisfactory as to leave very little for us to add.

The mistake of the learned counsel for the plaintiff in error consists, we conceive, in treating this as a tax of the government bonds, when it is really a tax upon a decedent's estate, dying

[Strode *v.* Commonwealth.]

without lineal heirs. And it does not help the argument, that the bulk of the estate is made up of these bonds; for that estate passed into the hands of the executor for administration, and is taxed in his hands *as an estate.* The law takes every decedent's estate into custody, and administers it for the benefit of creditors, legatees, devisees and heirs, and delivers the residue that remains, after discharging all obligations, to the distributees entitled to receive it. One of the legal obligations to which every estate that is to go to collateral kindred is subject, is this 5 per cent. duty to the Commonwealth.

And it is not until this work of administration is performed, that the right of succession attaches. The distributees may, indeed, consent to accept certain goods and chattels in specie without conversion, as is frequently done in settlement of estates; but such arrangement in no case affects the theory of the law, that the estate is first to be administered and then enjoyed.

Now this 5 per cent. tax is one of the conditions of administration, and to deny the right of the state to impose it, is to deny the right of the state to regulate the administration of decedents' goods. If an estate consist wholly of Federal bonds and is indebted, conversion of them into money is necessary to pay the debts; and nobody would doubt that the sum that remained after payment of debts would be subject to a deduction of 5 per cent. for the use of the state. But suppose the Federal bonds be used to pay the only indebtedness that exists, and a residue of estate remains for distributees, is it not to pay the collateral inheritance tax? Clearly it must, though it may be less than the aggregate of the bonds. The act operates on the *residue* of the estate after paying debts and charges, and, theoretically, that residue is always a balance in money. The administration-account always exhibits a balance in cash not in specific goods, whether bonds or horses; and though an heir may take bonds or horses as cash, the account must show, and always does show, a cash balance. That is the fund taxed by this law, and not the bonds or other chattels which may have produced the fund. Therefore, neither the prohibitory clause of the Act of Congress of 1862, nor any of the principles of decision against state authority to tax that which Federal authority has exempted from taxation, have any application here. The Federal government has not prohibited the states from prescribing rules of inheritance and succession to estates of decedents, and it would be a grievous mistake of legislative and judicial authority to apply it with such effect.

The judgment is affirmed.