## Stoner Estate

*Robert W. Critchfield*, for appellant.
*Leland W. Walker*, for Commonwealth.

LANSBERRY, P. J., April 21, 1958.—This is an appeal by the executor of the estate of Frank M. Stoner from the imposition of an inheritance tax by the Commonwealth and presents the issue whether or not the total accumulated amount paid by the Pennsylvania Public School Employe's Retirement Fund to the estate of the deceased school teacher, who was a member of the fund and in active service at the time of his demise, is subject to the provisions of the Pennsylvania Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301 ff.

Frank M. Stoner, widower, died testate on April 27, 1957. At the time of his death, he was a public school teacher in active service and a member of the Pennsylvania Public School Employe's Retirement Fund. His

wife, who was his designated beneficiary, predeceased him. By his last will and testament his estate is distributable to two charities and to nephews and nieces, there being no direct heirs.

The retirement fund agreement provided that in the event of the deaths of the member and of his beneficiary, the accumulated fund of the member became payable to the deceased member's estate. Accordingly, the sum of $11,893.39 was paid by the fund to the estate. That amount was included in the estate inventory and appraisement totaling $69,660.78, which otherwise consisted primarily of stocks, bonds, proceeds from a life insurance policy, several items of personal property and two parcels of real estate, one of which was improved farm acreage. Unlike the executor, the inheritance tax appraiser included in his appraisement for inheritance tax the full amount of the proceeds from the retirement fund above noted and made the same subject to the 15 percent inheritance tax. It is from that inclusion that this appeal was perfected.

Mr. Frank M. Stoner taught school for 23 years, during which period the above amount of $11,893.39 in the retirement fund accumulated in the following manner: $2,160.51 was contributed by Mr. Stoner during his years of service on which interest accumulated in the amount of $530.21; the remaining amount of $9,202.67 represented the contributions by the local school districts in which Mr. Stoner was employed and also those of the Commonwealth of Pennsylvania, which contributions by the local school district and the Commonwealth were credited to the account of Mr. Stoner at the time of his death. In the administration of the retirement fund, the several local school districts and the Commonwealth contribute to the retirement fund semiannually. These payments are deposited to a reserve account maintained by the board. Although the respective amounts of these school dis-

trict and Commonwealth contributions are computed once annually on an actuarial basis, they are actually paid into the reserve fund semiannually. At the time of retirement or upon the death of the employe member before retirement, the appropriate amount is transferred from the reserve account to the specific account of that member.

1. Counsel for the executor urges upon us the doctrine that tax statutes must be construed strictly and under such construction this fund is free from inheritance taxation. Our Supreme Court in Arbuckle's Estate, 324 Pa. 501, said in this regard: " 'No tax can be collected in the absence of a provision clearly imposing it upon the class to which the taxpayer or his property belongs': Callery's Appeal, 272 Pa. 255, 272. 'It is well settled that tax laws are to be construed most strictly against the government and most favorably to the taxpayer, and a citizen cannot be subjected to a special burden without clear warrant of law': Husband's Estate, 316 Pa. 361, 369". This doctrine of strict construction is applicable where the essential right of the Commonwealth to impose a true tax is under consideration as was the tax considered in Arbuckle's Estate, supra, in which case the four mill personal property tax was being considered and likewise in Commonwealth v. Allied Building Credits, Inc., 385 Pa. 370, 376, wherein the corporate net income tax was under consideration. This doctrine of strict construction is the purport of section 58 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558. However, as we shall subsequently observe, the tax statute presently under consideration is not essentially and organically a tax statute; the element of strict construction touches this matter insofar as it touches the "class to which the taxpayer or his property belongs". This doctrine of strict construction does not mean, however, that a subject should be permitted

to escape taxation if it is fairly and reasonably brought within the taxing provision; moreover, a tax statute like the Transfer Inheritance Tax Act should receive a reasonable construction to effectuate the purpose intended: Barber's Estate, 304 Pa. 235, 240. This is not the type of a taxation issue which may be disposed of by applying the doctrine of strict construction.

2. The purpose and intendment of the Transfer Inheritance Tax Act as stated in section 1 thereof, 72 PS §2301, and elaborated upon in a legion of cases, is the imposition of a so-called tax upon the transfer of any property intended to take effect in possession or enjoyment at or after death; it is not a tax on property but rather an excise on the privilege of inheritance, that is, upon the right of succession or privilege of receiving at death the property possessed by a decedent. Quite naturally there have been many and varying situations in which the Commonwealth sought to impose and the estate sought to avoid the provisions of this law. One of the more recent groups of cases presented to the courts involving inheritance taxation includes the various pension and retirement fund cases: Dorsey Estate, 366 Pa. 557; Hoelzel Estate, 101 Pitts. L. J. 77; Enbody and Burke Estates, 85 D. & C. 49. Upon first consideration it may occur to the reader that the instant case belongs to that group but a more careful reading will suggest that this case more likely presents the situation similar to that of the payment of the proceeds of an ordinary life insurance policy to the estate of the insured upon the latter's death.

In this case, agreeable to the contract between Mr. Stoner, a member of the fund as one party and the retirement fund as the other party, the full amount standing or placed to the specific record credit of Mr. Stoner became payable to his estate upon his death since his designated beneficiary had predeceased him and since he had not entered into retirement. On

the comparative basis of the ordinary life insurance policy, this fund is taxable under the Transfer Inheritance Tax Act of Pennsylvania since it is not payable by the fund directly to any named or designated benefiiciaries. The law is clear that life insurance proceeds paid to the estate are taxable: Section 1(d) of the act, supra: Murphy's Estate, 21 Pa. Superior Ct. 384; Myer's Estate, 309 Pa. 581. If the analogy be the proper one, then this fund is subject to the inheritance taxation scheme of the Commonwealth unless it is specifically or impliedly exempted therefrom.

3. The primary contention of counsel for the executor is that the fund is not taxable under the Inheritance Tax Act by reason of a specific exemption contained in the Retirement Act under the provisions of which this fund was accumulated. That exemption is contained in section 18 of the Retirement Act of July 18, 1917, P. L. 1043, 24 PS §2140, and is in part as follows:

"The right of a person to an employe's annuity, a State annuity, or retirement allowance, to the return of contributions, any benefit or right accrued or accruing to any person under the provisions of this act, and the moneys in the fund created under this act, are hereby exempt from any State or municipal tax . . ."*

Manifestly, this exemption does not expressly include the Transfer Inheritance Tax Act. If the exemption contained in the Retirement Act is applicable to these facts, it must be so by implication.

Although this exemption is contained in the Retirement Act rather than the Inheritance Tax Act, to the extent that the latter is a tax act it is subject to the canon of strict construction contained in the Statutory Construction Act, supra, 46 PS §558, which provides in part: "... All provisions of a law of the classes here-

---

* A similar exemption is contained in the State Employe's Retirement System Act of June 27, 1923, P. L. 858, sec. 17, 71 PS §1747.

inafter enumerated shall be strictly construed: (5) Provisions exempting persons and property from taxation." This canon applies to every provision exempting persons and property from taxation: McGuire v. Pittsburgh School District, 359 Pa. 602. There is nothing in the language of the exemption itself which impliedly includes within that proviso the Inheritance Tax Act. Consequently, we must examine the Inheritance Tax Act for any such implied exemption applicable to these facts.

There is a compelling reason why the exemption contained in the Retirement Act does not impliedly include within its proviso the Inheritance Tax Act and that is the true nature of the so-called inheritance tax as it had been historically regarded and as its doctrine has been so often exemplified in so many judicial pronouncements.

By permission of the sovereign Commonwealth and agreeable to its laws and regulations, the citizen, during life, may exercise ownership over property within the jurisdiction of the Commonwealth. Theoretically, at least, upon death of the citizen, that property reverts to the Commonwealth. Again, by permission, the citizen may exercise limited control over that property through testamentary disposition or in the absence thereof, it may pass under the intestacy provisions to next of kin. This permissive control over the devolution of property is obviously not absolute and is not without a consideration. That consideration, passing to the Commonwealth, is accomplished by the scheme of the inheritance tax laws. It is in essence the retention of a proportionate part expressed in percentum of the property, not in kind, but of the clear or net value as fixed and defined by the Commonwealth for its own sovereign uses and purposes. In Pennsylvania we have had since the Act of 1826, P. L. 227, relating to collateral inheritances, and since the Act

of 1917, P. L. 832, relating to and including as well direct inheritances, a scheme of retention of a portion of the property of decedents by the Commonwealth which is generally called inheritance taxation. Strictly speaking this portion of decedents' property going to the Commonwealth is not a tax as that term is usually applied.

In Clymer v. Commonwealth, 52 Pa. 185, it was said: "It is called a tax or duty, but has little, if any, analogy to a tax in the usual acceptation of the term." Finnen's Estate, 196 Pa. 72, refers to it as "a diminution of the amount that otherwise would pass. . . ." Kirkpatrick's Estate, 275 Pa. 271, refers to it; as the payment to the Commonwealth for the gift to the distributee of the remainder of the estate and in Shugars v. Chamberlain Amusement Enterprises, Inc., 284 Pa. 200, it is spoken of as the levying of a "toll against the passing of property" by the Commonwealth. Although the phrase transfer of property is referred to in the act as the basis of the tax impost, actually the tax is not on the property itself but on the succession or right of inheritance of a decedent's estate: Knowles' Estate, 295 Pa. 571, 592; Strode v. Commonwealth, 52 Pa. 181; Kirkpatrick's Estate, supra.

In Shugars v. Chamberlain Amusement Enterprises, Inc., supra, 284 Pa. 200 at 205, it is said: "Though commonly called a direct inheritance tax, yet, under the Act of 1919, the thing taxed was the right of succession or the privilege of receiving at death the property possessed by a decedent either by will or under the intestate laws. The fundamental thought was to levy a toll against the passing of property of citizens going by reason of death to others in whatever light the taking may be viewed."

From the foregoing resume of the nature of inheritance taxation and the numerous other authorities

which may be referred to, there is nothing from which it may be implied that the exemption provision in the Retirement Act included the Inheritance Tax Act of Pennsylvania. The very nature of the so-called inheritance tax, to wit, that it is an excise on the privilege of inheritance, negatives any such implication. If inheritance taxation were essentially and organically a tax rather than an excise on the privilege of inheritance then it might be regarded as being included in the broad language of the exemption here considered.

Although we have found no adjudicated case ruling the issue here presented, we believe there is authority for the above conclusion we have reached.

In Tack's Estate, 325 Pa. 545, Mr. Justice Stern reiterates and succinctly sets forth the historical and legal nature of the so-called transfer inheritance tax and applied that doctrine in the situation where the Commonwealth sought to impose the provisions of the Inheritance Tax Act to the net assets of an estate including 60 bonds of the Delaware River Bridge Joint Commission in the face amount of $1,000 each with accrued interest. Those bonds were issued under similar statutes enacted by the Pennsylvania and New Jersey legislatures which acts contained provisions exempting the bonds from taxation. Notwithstanding those tax exemption provisions in the acts authorizing the bonds, the Supreme Court held that the bonds and the accrued interest thereon when paid into the estate of decedent were subject to the provisions of the Transfer Inheritance Tax Act of 1919 as variously amended. After reviewing the history and nature of the tax and the authorities construing the Transfer Inheritance Tax Act, Mr. Justice Stern said:

"It thus clearly appears that even though the Act of 1919 in its title and enacting clauses designates itself as an act imposing a tax on the 'transfer' of property, a closer study reveals that the tax imposed by it is not

on the 'transfer' of securities as one would ordinarily use that term in connection with stocks or bonds, but is a tax on the succession or right of inheritance of a decedent's estate, the tax being measured by the clear value of the estate determined by appraising the assets of which it is composed and deducting the debts and the costs of administration, the nature of the items constituting the estate being wholly immaterial, so that, as we have seen, even securities of the Federal government, which cannot constitutionally be taxed by a State, as well as bonds which are expressly exempted by the legislation authorizing their issue from all forms of taxation whatever, are nevertheless properly included in the appraisement or assessed value of the decedent's estate upon which the amount of the inheritance tax is computed. Therefore, and in view of the well-known principle that exemptions from taxation must be strictly construed, it cannot be held that the legislature, in the Act of 1931, intended the word 'transfer' to give to the Delaware River Bridge bonds an immunity from inheritance taxation under the Act of 1919. Had it intended to grant so unique an exemption, it would no doubt have used less ambiguous language."

4. Finally, it is contended by counsel for the estate that upon the authority of Schmuckli's Estate, 341 Pa. 36, the retirement fund here is not subject to the Pennsylvania Inheritance Tax Act. That case is clearly distinguishable from the situation here presented for the manifest reason that the estate of Stoner was not merely the vehicle or conduit through which to pass this fund from the retirement system to designated beneficiaries, but as already noted by the very terms of the agreement, between the member and the fund in the event of the death of the member and the sole designated beneficiary, it became part and parcel of the very estate under which the will of the member

rather than his agreement with the fund eventually passed or succeeded to the distributees of the estate. In Schmuckli's case Mr. Justice Drew said:

"The further argument of the Commonwealth is that even if the bonds are expressly exempt from national and State taxation, they are still subject to the provisions of the Transfer Inheritance Tax Act, because of the inherent nature of that legislation. It is well settled, as argued by the Commonwealth, that an inheritance tax is not a tax upon the property itself, but rather a tax on the succession or right of inheritance of the assets of the estate of a decedent: Tack's Estate, 325 Pa. 545. That principle has no application here, for Congress has endowed these bonds with special characteristics which show a clear intent, particularly since the veteran did not exercise his right to redeem the bonds during his lifetime, that the estate was used as a mere conduit through which the gratuity was to pass to the ultimate donees thereof. The bonds, therefore, were not such part of the veteran's estate as would make them subject to a transfer inheritance tax."

Had the legislature of Pennsylvania endowed the accumulated funds under the Retirement Act with special characteristics which would have shown a clear intent the authority suggested by counsel would be more persuasive.

Concluding as we do that the entire fund paid over by the retirement fund to the estate of Frank M. Stoner is subject to the provisions of the Transfer Inheritance Tax, we accordingly enter the following

### Order

Now, April 21, 1958, the appeal in the above captioned matter having come on for argument and determination, upon consideration by the court, the appeal is dismissed and the record costs assessed against the estate.